2009), which has similar factual and procedural history as this case at bar. That case involves McCarthy and Holthus and not surprisingly the same counsel as in this case at bar- Ms. Ja Vonne Phillips, Esq. ("Counsel") who represented HSBC bank as a servicer of the debtor's Lee loan. Ms. Phillips appears in each pleading related to this matter at bar in the Plaintiff's Bankruptcy Case.

The Lee court held: *Id* at 902.

> "The court finds that Counsel tried to deceive the court because, after learning that the client HSBC had submitted false evidence stating that it owned the note when it had sold it to Freddie Mac for securitization, Counsel failed to inform the court promptly of the false evidence and proceeded with trial without making disclosure. While the original submission of the false evidence may have been an inadvertent mistake, the failure to inform the court promptly thereof after discovery, and proceeding to trial without disclosing the false evidence, was sanctionable conduct."

137. Plaintiff has suffered an identifiable loss due to the fraudulent conduct of the Foreclosing Defendants. He had defend frivolous and fraudulent actions, spending countless hours representing himself in *Pro Se*, which prevented him from making a living and earning enough to meet his payment obligations. In addition, the Plaintiff paid extra fees, had to undertake extra work and spent out-of-pocket expenses on legal research tools, etc. Plaintiff's credit was also ruined by the Foreclosing Defendants, which prevented him, among other things, from refinancing the Loan on favorable terms in the past.

138. As a direct and proximate result of the Foreclosing Defendants fraudulent actions, Plaintiff has incurred damages in an amount to be established according to proof at trial, but believed to be no less than $1,000,000.

139. These false misrepresentations all were made intentionally and with oppression, fraud and malice toward Plaintiff, such that Plaintiff is entitled to an award of exemplary and punitive damages against each of the Foreclosing Defendant.

### SECOND CAUSE OF ACTION FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

(AGAINST HOMEQ, WELLS FARGO AND OCWEN)

140. Plaintiff realleges and incorporates by reference herein each of the allegations in Paragraphs 1 through 137 above.

141. Plaintiff, MERS, WMC and Westwood were parties to the 2005 DOT and promissory Note attached hereto as **Exhs. A and B** respectively.

142. The Foreclosing Defendants had knowledge of the existence of the 2005 DOT and promissory Note between Plaintiffs, MERS, WMC and Westwood or with whoever the real party in interest is, if any.

143. The conducts alleged above, including without limitation to wrongfully foreclose on the Plaintiff's Property in 2007 and 2010, forcing Plaintiff to defend frivolous actions was intentional. As a result, self-employed Plaintiff, who represents himself in *Pro Se* couldn't meet his contractual obligations under the DOT or make enough earnings in July 2010 till present to pay the bills.

144. As a direct and proximate result of the Foreclosing Defendants' interference with the 2005 DOT and Note, Plaintiff has incurred damages in an amount to be established according to proof at trial, but believed to be no less than $75,000.

145. The above-described actions of the Foreclosing Defendants were made intentionally and with oppression, fraud and malice toward Plaintiff, such that Plaintiff is entitled to an award of exemplary and punitive damages against each of the Foreclosing Defendant.

### THIRD CAUSE OF ACTION FOR BREACH OF CONTRACT
(SPA Agreement – Third Party Beneficiary)
(AGAINST HOMEQ, WELLS FARGO AND OCWEN)

146. Plaintiff realleges and incorporates the allegations of ¶¶ 1-145 above.

147. Plaintiff, as a borrower is an intended third party beneficiary of the SPA agreements to which the Foreclosing Defendants are signatory (**Exh. C**), by which mortgages were to be modified in accordance with a HAMP Loan Modification Program. Under applicable guidelines in effect when Plaintiff was to be timely considered for HAMP eligibility, Plaintiff was at all times eligible for HAMP and the Foreclosing Defendants would have concluded the same had they timely performed the waterfall and other applicable calculations as provided for under applicable program directives, as opposed to entangle the Plaintiff in the illegal pleading war, preventing him from meeting his contractual obligations under the DOT and Note.

148. By attempting to foreclose on the Plaintiff's Property in 2010, while the HAMP request is still pending, Foreclosing Defendants have breached the SPA agreements, as to which Plaintiff is an intended third party beneficiary.

149. As a proximate result of Foreclosing Defendants' breach of the SPA agreements Plaintiff suffered damages according to proof at trial.

**FOURTH CAUSE OF ACTION FOR VIOLATION OF STATUTORY DUTIES**
**(AGAINST HOMEQ, WELLS FARGO AND OCWEN)**

150. Plaintiff realleges and incorporates the allegations of ¶¶ 1-149 above.

151. The Foreclosing Defendants have failed and refused to fulfill their statutory duties pursuant to Civil Code §§ 2923.5 and 2923.52, 2924, and related HAMP Supplemental Directives cited hereinabove to contact Plaintiff to discuss his financial situation and to explore options to avoid foreclosure or to set up a mandatory escrow account pursuant to the HAMP directives. The Foreclosing Defendants have initiated the foreclosing proceedings to record the Notice of Default instead, in violation of the statutory duties, forcing Plaintiff to defend frivolous actions.

152. As a proximate result of Foreclosing Defendants' breach of the statutory duties Plaintiff suffered damages according to proof at trial.

**FIFTH CAUSE OF ACTION FOR DECLARATORY RELIEF**
**(AGAINST ALL DEFENDANTS)**

153. Plaintiff realleges and incorporates the allegations of ¶¶ 1-152 above.

154. As alleged in Plaintiff's claims regarding Defendants' wrongful conducts described hereinabove, Plaintiff's rights have been violated.

155. Defendants have originated mortgages, collected payments, threatened foreclosure against Plaintiff for which Defendants are not owed any payments, have no lawful right to foreclose and have unlawfully attempted to deprive Plaintiff of his Property and further have failed to notify the Plaintiffs of the discharge of their obligations on the notes associated with the Loan.

156. Plaintiff seeks a declaratory judgment against Defendants stating that Defendants have violated Plaintiff's rights and that the Defendants had and have no right to hold the mortgage, lack standing and/or foreclose on the subject Property and that the Defendants are entitled to no further payments from the Plaintiff or recognition in Plaintiff's Title to the subject Property.

157. As alleged in the above paragraphs, the Loan on the Property was specifically designed to result in equity stripping by loaning funds at the same time to the Plaintiff as to other borrowers that were intended to fail.

158. The originators of the loans were brokers of loans and intended to place the loans but to never be the "lenders" that they purported to be.

159. The originators of the loans, were, in fact, a means by which MERS and the Defendants could insulate themselves from liability for the breach of contract, the violation of lending and recording laws, and for all the reasons stated in the allegations of this Complaint.

160. The Defendants are not the holders in due course of the promissory notes on the subject Property. The original lender WMC has no longer any interest in the Property, nor does the defunct now trustee Westwood or MERS or Wells Fargo as described hereinabove.

161. No one who has a legitimate interest in the subject Property has made any claim of that interest thus far or came forward and any fraudulent or improper conveyance of the Property should be declared void.

162. Notwithstanding the foregoing, Plaintiff also requests a declaratory relief to bifurcate the Loan into secured (current market value of the Property at the time of confirmation of the Debtor's Chapter 13 Plan) and the unsecured portion.

**SIXTH CAUSE OF ACTION**
**VIOLATTION OF THE FAIR CREDIT REPORTING ACT**
**(AGAINST HOMEQ AND OCWEN)**

163. Plaintiff realleges and incorporates the allegations of ¶¶ 1-162 above.

164. Plaintiff states on information and belief that HomEq and Ocwen knew that their foreclosure related activities were wrongful and improper.

165. Defendants HomEq and Ocwen willfully and with intent to injure Plaintiff reported to the various reporting agencies (Equifax, Experian and TransUnion) that Plaintiff was delinquent on his Loan obligations. Defendants HomEq and Ocwen willfully and/or negligently failed to remove and delete negative credit reporting information on Plaintiff's credit report despite such knowledge.

166. As a result, defendants violated the fair credit reporting act 15 USC section 1681 *et seq* and Plaintiff seeks all remedies available under said act, including but not limited to

the deletion of all negative credit information on Plaintiff credit report, monetary damages, or any other such and further relief as the Court may deem appropriate.

### SEVENTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST HOMEQ, WELLS FARGO AND OCWEN)

167. Plaintiff realleges and incorporates the allegations of ¶¶ 1-166 above.

168. The Foreclosing Defendants intended to injure Plaintiff by their unlawful outrageous acts, described hereinabove.

169. The activities engaged in by the Foreclosing Defendants have created and/or are creating a serious risk of infliction of intentional infliction of emotional distress.

170. Plaintiff was in fact injured by the intentional acts of the Foreclosing Defendants, suffering severe and extreme emotional distress.

171. The outrageous conduct of the Foreclosing Defendants, jointly and severally, in engaging in false, misleading and deceptive practices, and in repeatedly reporting Plaintiff as delinquent or in default on the Loan to national credit reporting agencies and in threatening Plaintiff with foreclosure twice (in 2007 and 2010) have caused Plaintiff humiliation, mental anguish and emotional distress in violation of the foreclosure laws and directives.

172. These acts with intention to cause, or reckless disregard of the probability of causing, emotional distress, together with the aforesaid illegal practices, customs, policies of Foreclosing Defendants, collectively or individually, were therefore a direct and proximate cause of the pain, suffering, humiliation, and statutory deprivations described above, to the Plaintiff.

173. The practices, policies and customs, as set forth in the preceding paragraphs were a deliberate and conscious choice by each corporate Defendant that establishes a deliberate indifference to Plaintiff's rights.

Case: 10-05376  Doc# 1-2  Filed: 11/01/10  Entered: 11/01/10 16:00:55  Page 6 of 11

174.    The actions of the Foreclosing Defendants, taken without lawful justification, constitute the intentional infliction of emotional distress upon Plaintiff under California law.

175.    As a direct and proximate result of the Foreclosing Defendants' outrageous acts, Plaintiff has incurred damages in an amount to be established according to proof at trial, but believed to be no less than $1,000,000.

176.    The above-described actions of the Foreclosing Defendants were made intentionally and with oppression, fraud and malice toward Plaintiff, such that Plaintiff is entitled to an award of exemplary and punitive damages against each of the Foreclosing Defendant.

**EIGHTH CAUSE OF ACTION FOR UNLAWFUL BUSINESS PRACTICES IN VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17200.**
**(AGAINST ALL DEFENDANTS)**

177.    Plaintiff realleges and incorporates the allegations of ¶¶ 1-176 above.

178.    All the unlawful, unfair and fraudulent business acts or practices by the Defendants from 2005 through present, described hereinabove, constitute Unfair Completion Law ("UCL") cause of action.

179.    Defendants have engaged, and continue to engage, in unfair, unlawful and deceptive trade practices in California by engaging in the unfair, deceptive and unlawful business practices outlined in this Complaint. In particular, Defendants have engaged, and continue to engage, in unfair, unlawful and deceptive trade practices by without limitation the following:

(a) Fraudulent foreclosure actions;

(b) Fraudulent misrepresentations to the Court regarding the accounting or Note ownership;

(c) Violation of statutory duties;

(d) Violation of Fair Credit Reporting Act;

(e) Breach of SPA Contract;

(f) Intentional Interference with contractual relationship;

(g) Causing Emotional Distress;

(h) Tax avoidance and operation of business in California without registration;

(i) Fraudulent or wrongful conveyance of Property.

180. Plaintiff seeks an injunction to prohibit Defendants from continuing to engage in the unfair trade practices complained of herein.

181. As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial. Plaintiff is entitled to restitutions equal to the amount paid to the Defendants thus far.

### NINTH CAUSE OF ACTION FOR RESCISSION OF THE DOT AND NOTE
### (AGAINST ALL DEFENDANTS)

182. Plaintiff realleges and incorporates the allegations of ¶¶ 1-181 above.

183. Rescission is a remedy that disaffirms the contract (Ca Civil § 1688 et seq.). The DOT and the Note secured by the Property may have been properly formed, but effectively extinguished *ab initio* as though it never came into existence; and the terms cease to be enforceable. [Ca Civil § 1688]. MERS was not authorized to do business in California, nor did it have any financial interest in these contracts. Similarly, the defunct now original trustee Westwood and WMC, both have no interest in these contracts and were used as fake front companies to initiate the Loan and to sell it on the secondary market, which has never taken place as alleged herein.

VICHES V. HOMEQ ET AL. ADVERSARY COMPLAINT -Page 42 of 45-
Case: 10-05376  Doc# 1-2  Filed: 11/01/10  Entered: 11/01/10 16:00:55  Page 8 of 11

184. It is Plaintiff's intention to accomplish the ultimate purpose of rescission--i.e., to return the parties to their precontract status quo positions they were in 2005 before executing the DOT and the Note. Thus, in a real property purchase and sale transaction, a rescission normally requires the buyer to return the property (title) to the seller and the seller to return the funds received from the buyer.

185. A formal offer to restore the contractual benefits received is not required. Plaintiff's service of the complaint seeking rescissionary relief "shall be deemed" to be the requisite offer. [Ca Civil § 1691] As such, the Plaintiff offers to surrender the Property in exchange for all the funds (over $200,000 paid by the Plaintiff thus far).

186. In an action based upon rescission, the Court may order whatever relief is necessary to adjust the equities between the parties and ensure restoration to the precontract status quo. [Ca Civil § 1692] The goal is to reach an equitable result by returning the parties to the position they were in before the contract was entered into and avoiding unjust enrichment. Therefore, such additional relief may operate in favor of either or both parties.

187. For example, the Court may order a restitution of benefits conferred by the rescinding party and also award him consequential damages incurred as a result of entering into the contract (so long as the award does not include a double or inconsistent recovery). The Court may also award compensation or other equitable relief to the nonrescinding party (e.g., an offset for the value of the rescinding party's use of the property). [Ca Civil § 1692]

188. Consequential damages in the rescinding party's favor may include all out-of-pocket expenses incurred in reliance on the contract--including, e.g., escrow fees, title charges, the value (or cost) of any improvements made to the property, payments made by a rescinding buyer on a mortgage imposed by the seller.

189. Ca Civil § 1692 expressly states that in an action to enforce a rescission, the aggrieved party "shall be awarded complete relief"; and it also states that a "claim for damages is not inconsistent with a claim for relief based upon rescission." [Ca Civil § 1692] Thus, where the rescission is based upon fraud, like here, and provided Plaintiff (rescinding party) satisfies the applicable statutory standards (Ca Civil § 3294), the Court apparently has discretion to award the rescinding party punitive damages. [See <u>Mahon v. Berg</u> (1968) 267 Cal.App.2d 588, 589-590, 73 Cal.Rptr. 356, 357-358]

190. Plaintiff believes that he was fraudulently induced to execute the contracts (DOT and the Note) with adhesion, which were doomed from the beginning by concealing the identity of the true lender, fraudulently conveying the Property without proper recording and without registration in California by MERS, fraudulently attempting to foreclose on the Plaintiff's Property more than once. The subject Property has become "My Home Is My Hassle" for the Plaintiff due to the fraudulent and unlawful acts of the Defendants, described herein.

191. Plaintiff was unable to promptly refinance the Property he was entitled to since 2008 as stated herein.

192. As a proximate result of Defendants' economic duress, Plaintiff has suffered damages according to proof.

WHEREFORE, Plaintiff prays for relief as follows:

1. For a temporary restraining order and preliminary injunction enjoining Defendants from proceeding with foreclosure of the Plaintiff's Property;

2. For declaratory relief as alleged;

3. For compensatory damages according to proof and prejudgment interest;

4. For rescission of the DOT and the promissory Note upon surrender of the Property, or whatever relief is necessary to adjust the equities that the Court deem just and upon return all the funds paid by the Plaintiff thus far related to the Property back to him;

5. For exemplary and punitive damages;

6. For reasonable attorney's fees, if applicable and costs;

7. For such other and further relief as the court may deem just and proper.

Dated: October 31, 2010

By _____
Elliot A. Viches
Plaintiff (Debtor) in *Pro Se*